NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 13 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROBERT KATAGIRI, | No. 18-72398 |
| Petitioner, | BRB No. 18-0149 |
| v. | |
| MATSON TERMINALS, INC.; SIGNAL MUTUAL INDEMNITY ASSOCIATION; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, | MEMORANDUM* |
| Respondents. | |

On Petition for Review of an Order of the
Benefits Review Board

Submitted January 9, 2020**
San Francisco, California

Before: WALLACE and FRIEDLAND, Circuit Judges, and LASNIK,*** District Judge.

Robert Katagiri petitions for review of a Benefits Review Board (Board)

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\*      The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

decision affirming an administrative law judge's (ALJ) denial of his request for a permanent disability award. We have jurisdiction under 33 U.S.C. § 921(c), and we deny the petition.

Robert Katagiri was working for Matson Terminals, Inc. (Matson) on April 16, 2012, when he injured the prosthesis in his right knee while exiting from a motor vehicle.[1] As a result, Katagiri underwent knee surgery on April 20th and took leave from work until July 29, 2012.

Katagiri filed a benefits claim under the Longshore and Harbor Workers' Compensation Act (Longshore Act), 33 U.S.C. §§ 901, *et seq.*, against Matson and its group self-insurer, Signal Mutual Indemnity Association Ltd (Signal).[2] On December 10, 2015, an administrative law judge (ALJ) determined that Katagiri's injury was work-related, awarded Katagiri temporary total disability benefits for the 102 days he was off from work, and ordered Matson to pay certain medical bills. The ALJ did not award any permanent disability benefits because Katagiri had "not shown he [was] entitled to permanent disability benefits, nor ha[d] he requested them." On December 22, 2015, Matson filed a Notice of Final Payment indicating compensation pursuant to the ALJ's order was complete the previous day. This

---

[1] Katagiri had his knee replaced in 2011.

[2] For the purposes of this decision, we do not differentiate between Matson and Signal, and refer to them collectively as Matson.

payment did not include medical bills that Matson ultimately paid to a third-party insurance collector after receiving an August 28, 2017 medical invoice from Katagiri.

On February 8, 2017, Katagiri filed a request for permanent disability award (Request), in which he requested permanent partial disability benefits based on a 75-percent permanent impairment to his right lower extremity. Pursuant to Matson's motion for a summary decision, the ALJ denied the Request as an untimely attempt to modify the December 2015 award under 33 U.S.C § 922. Katagiri then filed a motion for reconsideration, which the ALJ denied. Finally, Katagiri appealed to the Board, which affirmed the ALJ's conclusion that Katagiri's Request was untimely.

The sole question before us is whether the Board incorrectly determined that Katagiri's Request was untimely as a matter of law.[3] Reviewing the Board's legal conclusion de novo, *Iopa v. Saltchuk-Young Bros., Ltd.*, 916 F.3d 1298, 1300 (9th Cir. 2019), we conclude that it did not.

Section 922 of the Longshore Act "provides the only way to modify an award once it has issued" and "provides for modification of awards 'on the ground of a change in conditions or because of a mistake in a determination of fact.'" *Metro. Stevedore Co. v. Rambo*, 515 U.S. 291, 294 (1995), *quoting* 33 U.S.C. § 922. In

---

[3] We reject Katagiri's arguments concerning waiver because Matson clearly raised this argument in a timely manner before the ALJ.

relevant part, Section 922 permits the deputy commissioner, upon an application by a party or *sua sponte*, at "any time prior to one year after the date of the last payment of compensation" to "terminate, continue, reinstate, increase, or decrease such compensation, or award compensation." 33 U.S.C § 922.

An examination of Katagiri's Request reveals that it reflects an attempt to modify the December 10, 2015 order so as to "increase" the award. The vast majority of the Request merely quotes the ALJ's December 10, 2015 order, in which the ALJ awarded Katagiri temporary total disability benefits, but declined to award permanent disability benefits because Katagiri had "not shown he [was] entitled to permanent disability benefits, nor ha[d] he requested them." The remainder of the Request attaches additional evidence of Katagiri's physical condition and asks for a rating necessary to increase his award to include a permanent partial disability benefit. *Cf.* 33 U.S.C. § 922 (providing timeframe in which a "party" may apply to "increase" compensation).

Because Matson completed its last payment to Katagiri on December 21, 2015, and Katagiri's Request was filed in February 2017, the Request constitutes an attempt to modify filed more than "one year after the date of the last payment of compensation," 33 U.S.C. § 922, and is thus time-barred.

Katagiri attempts to avoid this outcome by arguing that his Request is instead a new claim based on the purported fact that "his continued employment had

4

aggravated his knee." Quite simply, this is untrue: neither the Request nor the attached medical report indicate his requested 75% permanent disability rating is the result of his continued employment.

Katagiri argues, in the alternative, that his Request was a timely modification application under 33 U.S.C. § 922 because it was "made within one year of the last payment of compensation." In order to arrive at this conclusion, Katagiri asserts that Matson's payment to a third-party insurance collector to settle medical bills reflected in an August 28, 2017 invoice is the "last payment of compensation." Even assuming a payment for Katagiri's medical bills following the Request could retroactively make the Request timely, Katagiri's argument fails because the phrase "payment of compensation" in the context of § 922 does not extend to the payment of medical bills to a third-party insurance collector.

In *Marshall v. Pletz*, the Supreme Court rejected a similar argument regarding this phrase in a similar section of the Longshore Act. 317 U.S. 383, 390 (1943). In *Pletz*, the Supreme Court held that "the 'payment of compensation' mentioned in" 33 U.S.C. § 913(a) did not include "medical aid" and instead referred only "to the periodic money payments to be made to the employe[e]." *Id.* at 390–91. Sections 913 and 922 not only use the same phrase in the context of similar language, but they also serve the same purpose of establishing statutes of limitation for pursuing compensation claims under the Act. *See* 33 U.S.C. § 913(a) ("If payment of

5

compensation has been made without an award on account of such injury or death, a claim may be filed within one year after the date of the last payment"). Similar logic applies here: Matson's payments to the third-party insurance collector do not constitute "payment of compensation" under Section 922 and thus do not extend the limitations period.

Based on a review of other provisions of the Longshore Act, the Fourth Circuit has similarly concluded that "the term 'compensation' in 33 U.S.C. § 922 does not include voluntary payments by an employer for medical services provided to an employee" and thus "payments of such services do not extend the Section [9]22 limitations period." *See Wheeler v. Newport News Shipbuilding & Dry Dock Co.*, 637 F.3d 280, 291 (4th Cir. 2011). The Fourth Circuit reasoned that, although *Pletz* was not "controlling" because it "addressed a separate statute with different language," *Pletz* was nevertheless "instructive" in support of this outcome, which is also supported by Section 922's context, purpose, and legislative history. *See id.* at 285–89. We agree.[4]

---

[4] Another section of the Longshore Act entitles employees to recover certain amounts that they expended for medical services which should have been provided by their employer. *See* 33 U.S.C. § 907(d). Conceivably, reimbursements to an employee for expenditures on medical expenses under this provision could constitute "compensation" under Section 922. *Cf. Grimm v. Vortex Marine Constr.*, 921 F.3d 845, 849 (9th Cir. 2019) (Watford, J., concurring) (reasoning that although an employer's "obligation to furnish future medical care" would not be a "compensation order" under 33 U.S.C. § 921(d), an additional order directing an

Contrary to Katagiri's arguments, this conclusion applies with equal force to Matson's payments made pursuant to the ALJ's December 10, 2015 order because Section 922 does not distinguish between payments made voluntarily and payments made pursuant to a compensation order. *See* 33 U.S.C. § 922 ("the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, *whether or not a compensation order has been issued* . . . issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation" (emphasis added)).

We have carefully reviewed Katagiri's remaining arguments—including those pertaining only to dicta in the ALJ's orders—and conclude they do not warrant reversal of the Board's decision. Katagiri's petition for review is therefore **DENIED**.

---

employer to pay for medical bills an employee had already incurred would be). We need not determine here whether such a reimbursement would be "compensation," however, because the payment Katagiri relies on was to an insurance collector for a medical provider, not to Katagiri. *See Pletz*, 317 U.S. at 391 ("In the normal case, . . . the insurer defrays the expense of medical care but does not pay the injured employe[e] anything on account of such care. Only if the employer and the insurer omit to furnish such care can the employe[e] procure it for himself and then obtain from the deputy commissioner an award to reimburse him for what he has spent.").